UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE CASHON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KINDRED HEALTHCARE OPERATING, INC., a Delaware Corporation; GENTIVA CERTIFIED HEALTHCARE CORP., a Delaware Corporation, and DOES 1 through 15 inclusive,<br><br>Defendants. | Case No. 16-cv-04889-RS<br><br>**ORDER DENYING MOTION TO STAY** |

**I. INTRODUCTION**

Plaintiff Valerie Cashon filed suit on behalf of herself and other employees of Kindred Healthcare Operating, Inc. and Gentiva Certified Healthcare Group ("Defendants") for labor violations. Defendants argue that Cashon entered into a mandatory arbitration agreement that precludes class action suits and, while they do not seek to compel arbitration, they move to stay this case pending the Supreme Court's decision on whether it will resolve a circuit split regarding such arbitration agreements. Defendants argue that a stay is mandatory under the Federal Arbitration Act ("FAA") and also warranted by the interests of justice. They concede, however, that the arbitration agreement here is unenforceable as a result of *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016) ("*Morris*"). A stay is therefore not required under the FAA. Neither do the interests of justice require a stay because it is not clear that the Supreme Court will grant certiorari and, further, overturn *Morris*. Defendants' motion is thus denied. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument and the November 18, 2016 hearing will be vacated.

## II. BACKGROUND

Gentiva, a subsidiary of Kindred, employs Cashon as an occupational therapist. On June 3, 2016, Gentiva provided Cashon a Dispute Resolution Agreement ("DRA") via email. The DRA provides: "All disputes covered by this Agreement will be decided by a single arbiter through arbitration and not by way of court or jury trial." Valenzuela Decl., Ex. C. It further states: "The Company and Employee mutually agree to arbitrate all claims or controversies, past, present or future, including without limitation, claims arising out of or related to Employee's application for employment, employment, and/or the termination of employment." *Id.* It also provides: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver is not severable from this Agreement in any case in which (1) the dispute is filed as a class action; and (2) a civil court of competent jurisdiction finds the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable." *Id.* Cashon confirmed receipt of the DRA, but never signed it. Gentiva also sent Cashon another document—"Frequently Asked Questions" ("FAQ") —to explain the terms of the DRA. The FAQ document explains that the DRA is a mandatory condition of employment: "if you do not sign the Agreement, the Company will provide you with another copy of the Agreement that will not require your signature to be effective." *Id.*, FAQ at 3. Cashon alleges that she never received another copy of the DRA.

On August 24, 2016, Cashon filed a complaint against Defendants, asserting wage and hour violations on a class-wide basis. On August 22, 2016, the Ninth Circuit issued its opinion in *Morris*. It held that an arbitration agreement requiring employees to bring claims in "separate proceedings," thereby prohibiting class and collective actions, violated the employees' right to engage in concerted activity under the National Labor Relations Act ("NLRA"). 834 F.3d at 990. Other circuits, however, have enforced mandatory class waivers and rejected the argument that they violate the NLRA. *See, e.g., Murphy Oil U.S.A., Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th

Cir. 2013). Several employers as well as the NLRB have asked the Supreme Court to resolve the circuit split.

### III.  DISCUSSION

Defendants concede that *Morris* renders the DRA unenforceable.[1] Thus, they do not move to compel arbitration, but only to stay this case pending the Supreme Court's decision on whether it will resolve the circuit split. Defendants' briefing, however, does not focus on the likelihood that the Supreme Court will grant certiorari. Instead, they argue that the (admittedly unenforceable) DRA governs Cashon's claims, so a stay is mandatory under the FAA. They also argue that the interests of justice warrant a stay. Neither argument is persuasive.

**A. A Stay is Not Required Under the FAA.**

Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Only when the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," must the court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

As Defendants acknowledge, the DRA is unenforceable as a result of *Morris*. Kindred provided no opportunity for employees to opt-out of the DRA and the DRA provides that "[t]he Class Action Waiver is not severable." Valenzuela Decl., Ex. C. *Morris* held that a mandatory arbitration agreement that precludes class action suits violates Section 7 of the NLRA. 834 F.3d at 985-86. The collective action rights implicated by the DRA's class waiver here are "fundamental protections of the NLRA, so the FAA does not mandate the enforcement of a contract that alleges

---

[1] Consequently, Cashon's other arguments against the enforceability of the DRA, including that she never signed the DRA or received a copy that could be executed without her signature, need not be addressed.

ORDER RE: MOTION TO STAY
CASE NO. 16-cv-04889-RS

3

their waiver." *Id.* at 986. The claims of the present case could not be referred to arbitration, so they need not be stayed under 9 U.S.C. § 3.

### B. The Interests of Justice Do Not Warrant A Stay.

Defendants next argue that the "interests of justice" warrant a stay because the Supreme Court is considering whether to grant certiorari in *Morris*. Yet, "[a] stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (internal quotation marks and citations omitted). The Supreme Court has held that four factors must guide a court's decision on whether to grant a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The first factor weighs strongly against a stay. Defendants have made no showing that the Supreme Court is likely to grant certiorari in *Morris* or similar cases from other circuits. The Supreme Court receives approximately 7,000-8,000 petitions for a writ of certiorari each term, but grants and hears oral argument in only about 80 cases. *See* https://www.supremecourt.gov/. It has already granted 45 petitions for certiorari this term. *Id.* Defendants cite no evidence to support the objectively unlikely conclusion that the Supreme Court will grant certiorari and, further, overturn *Morris*.

The second factor, irreparable injury, weighs slightly toward a stay. Litigation will force Defendants to spend time and money litigating claims they might otherwise arbitrate. Nevertheless, the third factor disfavors a stay. A stay will further deprive Cashon and other plaintiffs the relief allegedly owed to them. As to the fourth factor, Defendants provide no reason why the public interest weighs in favor of a stay. Overall, the factors counsel against a stay.

### IV. CONCLUSION

Defendants' motion to stay is denied without prejudice. Defendants may renew their

motion if the Supreme Court grants certiorari in *Morris* or any of the related cases.

**IT IS SO ORDERED**.

Dated: Nov. 9, 2016

_____
RICHARD SEEBORG
United States District Judge