**PEREZ LAW OFFICES**
Anthony M. Perez, Jr. (SBN 113041)
455 Capitol Mall, Suite 231
Sacramento, CA 95814
Tel: (916) 441-0500
Fax: (916) 441-0555
Email: aperez@perezlawoffices.com

**WEINTRAUB TOBIN CHEDIAK COLEMAN GRODIN**
Law Corporation
Charles L. Post, State Bar No. 160443
Brendan J. Begley, State Bar No. 202563
Darrin M. Menezes, State Bar No. 202729
400 Capitol Mall, 11th Floor
Sacramento, CA 95814
Telephone:    (916) 558-6000
Facsimile:    (916) 446-1611
Email: cpost@weintraub.com
Email: bbegley@weintraub.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE CASHON, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>KINDRED HEALTHCARE OPERATING, INC., a Delaware Corporation; GENTIVA CERTIFIED HEALTHCARE CORP., a Delaware Corporation; and DOES 1 through 15, inclusive,<br><br>        Defendants. | Case No. 3:16-cv-04889-RS<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS, APPROVING PAGA SETTLEMENT, AND PRELIMINARILY APPROVING CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** **April 19, 2018**<br>**Time:** **1:30 p.m.**<br>**Judge:** **Hon. Richard Seeborg**<br>**Location:** **Courtroom 3**<br>        **17th Floor**<br>        **United States Courthouse**<br>        **450 Golden Gate Ave.**<br>        **San Francisco, CA** |

1

**NOTICE OF MOTION AND MOTION**

2      TO DEFENDANTS KINDRED HEALTHCARE OPERATING, INC. AND GENTIVA

3  CERTIFIED HEALTHCARE CORP. AND THEIR COUNSEL OF RECORD AND ALL

4  OTHER INTERESTED PARTIES:

5      PLEASE TAKE NOTICE THAT on April 19, 2018 at 1:30 p.m., in Courtroom 3 of this

6  Court located at 450 Golden Gate Avenue, San Francisco, California  94102, Plaintiff Valerie

7  Cashon ("Plaintiff" or "Representative Plaintiff") will move and hereby moves the Court for an

8  order granting the following relief:

9      (1)    Certifying the proposed settlement class defined as "all persons who were

10  employed by either Kindred Healthcare Operating, Inc. or Gentiva Certified Healthcare Corp. or

11  one of its/their direct or indirect subsidiaries to provide skilled home health care services in

12  California as Clinicians or piece rate employees at any time from August 24, 2012 through and

13  including the date the Preliminary Approval Order is entered by the Court" (the "Class" or "Class

14  Members") for purposes of settling all non-PAGA claims pleaded in the Action, including all non-

15  PAGA claims pled in Plaintiff's proposed Second Amended Complaint, on the terms set forth in

16  the Parties' Class Action Settlement Agreement and Stipulation filed herewith,[1] pursuant to Rule

17  23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. The term "Clinicians" includes

18  per diem, part-time and full-time home health aides, occupational therapists, occupational therapist

19  assistants, physical therapists, physical therapy assistants, registered nurses, licensed practical

20  nurses, licensed vocational nurses, medical social workers, nursing assistants, speech/language

21  pathologists, speech/language therapists, and other clinicians paid on an hourly or per visit basis;

22      (2)    Approving the PAGA Settlement, including the PAGA Payment, distribution plan

23  of the PAGA Payment, and the release of the PAGA Claims on the terms set forth in the Parties'

24  Class Action Settlement Agreement and Stipulation;

25  ///

26

27  [1] A true and correct copy of the Class Action Settlement Agreement and Stipulation is attached as **Exhibit A** to the Declaration of Anthony M. Perez, Jr., filed concurrently herewith. All capitalized terms appearing in this Motion that

28  are not defined herein have the meanings assigned to them in the Class Action Settlement Agreement and Stipulation.

weintraub **tobin** chediak coleman grodin
law corporation

1      (3)    Certifying Plaintiff as the Class Representative pursuant to Fed. R. Civ. P. 23 and

2  appointing Plaintiff's attorneys as Class Counsel pursuant to Fed. R. Civ. P. 23(g);

3      (4)    Preliminarily approving the Parties' proposed Class Settlement as fair, reasonable,

4  and adequate, pursuant to Fed. R. Civ. P. 23(e);

5      (5)    Preliminarily granting the Representative Plaintiff's applications for an award of an

6  incentive payment pursuant to applicable legal authorities permitting courts to make such awards

7  where they are fair and reasonable;

8      (6)    Setting a Final Approval Hearing for _____, 2018, or the earliest

9  available date thereafter, pursuant to Fed. R. Civ. P. 23(e) to finally determine whether the

10  proposed Class Settlement should be approved as a fair, reasonable, and adequate settlement of the

11  claims encompassed by the Class Settlement and to determine whether to grant Class Counsel's

12  motion for attorney's fees and costs;

13      (7)    Directing Class Notice of the PAGA Settlement, the Class Action Settlement, and

14  the Fairness/Final Approval Hearing to Class Members pursuant to Fed. R. Civ. P. 23(c)(2)(B) and

15  23(e)(1);

16      (8)    Directing the implementation of the plan for directing Class Notice to the Class

17  Members based on the terms set forth in the Settlement Agreement, and setting forth the dates or

18  deadlines for submitting a Claim Form, opting out and objecting and for the Parties and the

19  Settlement Administrator to perform the required acts relating to the notice process as provided in

20  the Settlement Agreement;

21      (9)    Dismissing the PAGA Claims asserted in the Action with prejudice as to the

22  Plaintiff and all PAGA Releasees, who are those individual who were employed by either Kindred

23  Healthcare Operating, Inc. or Gentiva Certified Healthcare Corp. or one of its/their direct or

24  indirect subsidiaries to provide skilled home health care services in California as Clinicians or

25  piece rate employees at any time from August 24, 2012 through and including the date the

26  Preliminary Approval Order is entered by the Court, and permanently enjoining all PAGA

27  Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties; and

28  ///

{2345443.DOC;6}      2      Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

weintraub **tobin** chediak coleman grodin
law corporation

1         (10)    Making findings of fact and stating conclusions of law in support of the foregoing.

2         This Motion is based on the Parties' Class Action Settlement Agreement and Stipulation,

3    the Memorandum of Points and Authorities, the Declarations of Anthony M. Perez, Jr. and

4    Charles L. Post, the proposed order filed herewith, the other records and pleadings filed in this

5    Action, and upon such other documentary and oral evidence or argument as may be presented to

6    the Court at the hearing of this Motion.

7         Respectfully Submitted,

8    Dated: April 6, 2018          **PEREZ LAW OFFICES**

9                            By:    /s/ Anthony M. Perez, Jr.

10                                  Anthony M. Perez, Jr.

11   Dated: April 6, 2018          **weintraub tobin** chediak coleman grodin

12                          **LAW CORPORATION**

13                           By:    /s/ Brendan J. Begley

14                                  Brendan J. Begley
                                    Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

weintraub **tobin** chediak coleman grodin
law corporation

{2345443.DOC;6}          3          Memorandum of Points & Authorities ISO Motion
                                    for Preliminary Approval of Class Settlement
                                    3:16-cv-04889-RS

**TABLE OF CONTENTS**

| | | | | *Page* |
|---|---|---|---|---|
| I. | | INTRODUCTION | | 4 |
| II. | | CAUSES OF ACTION AND PROCEDURAL BACKGROUND | | 6 |
| III. | | KEY TERMS OF THE PROPOSED SETTLEMENT | | 9 |
| | A. | The Settlement Class. | | 9 |
| | B. | $12,000,000 Non-Reversionary Gross Settlement Fund. | | 9 |
| | C. | Attorneys' Fees and Costs. | | 10 |
| | D. | Incentive Award to Representative Plaintiff. | | 10 |
| | E. | PAGA Payment. | | 10 |
| | F. | Distribution of the Net Settlement Fund to Claimants. | | 11 |
| | G. | Plan of Distribution of the Net Settlement Fund. | | 12 |
| | H. | Release of All Settled Claims. | | 12 |
| | I. | Release of PAGA Claims. | | 13 |
| | J. | CAFA Notice. | | 13 |
| IV. | | DISCUSSION RE PAGA SETTLEMENT | | 14 |
| V. | | DISCUSSION RE CLASS SETTLEMENT | | 15 |
| | A. | Procedure for Approving a Class Action Settlement. | | 15 |
| | B. | The Court Should Certify a Settlement Class. | | 16 |
| | | 1. | The Numerosity Requirement is Satisfied. | 17 |
| | | 2. | There are Common Questions of Law and Fact. | 17 |
| | | 3. | The Representative Plaintiffs' Claims are Typical of the Class's Claims. | 19 |
| | | 4. | Plaintiff will Fairly and Adequately Represent the Class. | 20 |
| | | 5. | Common Questions of Law and Fact Predominate. | 20 |
| | | 6. | A Class Action is Superior to Alternate Methods of Adjudication. | 21 |
| | C. | Plaintiffs' Counsel is qualified to be Class Counsel. | | 22 |
| | D. | The Settlement is Fair, Reasonable and Adequate. | | 23 |

weintraub tobin chediak coleman grodin
LAW CORPORATION

1.  The Proposed Class Settlement is the Product of Informed Negotiations. .................................................................. 24

2.  The Settlement Arose from Non-Collusive, Arms-Length Negotiations. ................................................................. 25

3.  The Settlement is Not Deficient and Does Not Grant Preferential Treatment. ..................................................... 25

    a.   Amount of Settlement Payment. ................................... 26

    b.   The Class Settlement is of Significant Value. ................... 27

    c.   Plan of Distribution of the Net Settlement Fund. ................. 28

    d.   Settled Claims Being Released. .................................. 29

E.  Attorneys' Fees and Costs Requested are Reasonable. ........................ 29

F.  The Incentive Award Requested for the Representative Plaintiff is Fair and Reasonable. ............................................................. 32

G.  The Settlement Administrator and Administration Process. .................... 33

H.  The Court Should Set a Fairness Hearing. .................................... 33

I.  The Court Should Direct Notice to the Class of the PAGA Settlement, the Proposed Settlement and the Final Fairness Hearing for the Proposed Class Settlement. ...................................... 34

J.  Proposed Preliminary Schedule. ............................................. 35

VI.  CONCLUSION ................................................................ 36

weintraub tobin chediak coleman grodin
LAW CORPORATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*Page*

## *State Cases*

*Arias v. Superior Court*
(2009) 46 Cal. 4th 969 .............................................................................................. 14

*Kullar v. Foot Locker Retail, Inc.*
(2008) 168 Cal.App.4th 116 ...................................................................................... 27

## *Federal Cases*

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) .............................................................................................. 21, 22

*Blackie v. Barrack*
524 F.2d 891 (9th Cir. 1975) ...................................................................................... 18

*Baumann v. Chase Inv. Servs. Corp.*
747 F.3d 1117 (9th Cir. Cal. 2014) .......................................................................... 14

*Cal. Rural Legal Assistance, Inc. v. Legal Services Corp.*
917 F.2d 1171 (9th Cir. 1990) .................................................................................... 19

*Celano v. Marriot International, Inc.*
242 F.R.D. 544 (N.D. Cal 2007) ................................................................................ 17

*Chun-Hoon v. McKee Foods Corp.*
2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ...................................................... 16, 24

*Churchill Village, LLC v. General Elec.*
361 F.3d 566 (9th Cir. 2004) ...................................................................................... 34

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
244 F.3d 1152 (9th Cir. 2001) .............................................................................. 20, 21

*Dennis v. Kellog Co.*
2010 WL 4285011 (S.D. Cal. Oct 14, 2010) ............................................................. 24

*Dukes v. Wal-Mart, Inc.*
509 F.3d 1168 (9th Cir. 2007) .......................................................................... 17, 18, 19, 20

*Elkins v. Equitable Life Ins. Of Iowa*
1998 WL 133741 (M.D. Fla. 1998) ........................................................................... 22

weintraub tobin chediak coleman grodin
LAW CORPORATION

*Gen. Tel. Co. of the Sw. v. Falcon*
  457 U.S. 147 (1982) .................................................................................... 19

*Glass v. UBS Financial Services, Inc.*
  2007 U.S. Dist. LEXIS 8476 (ND. Cal. 2007) .......................................... 31

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ............................................................. 16, 18

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ...................................................................... 19

*Horton v. USAA Cas. Ins. Co.*
  266 F.R.D. 360 (D. Ariz. 2009) ................................................................. 24

*Ingram v. The Coca-Cola Co.*
  200 F.R.D. 685 (N.D. Ga. 2001) ................................................................ 32

*In re Activision Securities Litigation*
  723 F Supp. 1373 (ND. Cal 1989) ............................................................. 30

*In re Manufacturers Life Insurance*
  2008 WL 4950939 (S.D. Cal. 1998) ........................................................... 31

*In re Syncor ERISA Litigation*
  516 F.3d 1095 (9th Cir. 2008) .................................................................... 31

*In re Wireless Facilities, Inc. Sec. Litig.*
  253 F.R.D. 630 (S.D. Cal. 2008) ........................................................... 16, 33

*Misra v. Decision One Mortgage Co.*
  2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ........................................... 35

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 23

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989) ................................................................ 30, 31

*Riordan v. Smith Barney*
  113 F.R.D. 60 (N.D. III. 1986) ................................................................... 17

*Six Mexican Workers v. Arizona Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990) .................................................................... 30

*Staton v. Boeing*
  327 F.3d 938 (9th Cir. 2003) ...................................................................... 31

*Stanger v. China Elec Motor, Inc.*
  812 F.3d 734 (9th Cir. 2016) ...................................................................... 30

*Strube v. American Equity Inv. Life Insurance Co.*
  226 F.R.D. 688 (M.D. Fla. 2005) ............................................................... 22

*Valentino v. Carter-Wallace*
  97 F.3d 1227 (9th Cir. 1996) ...................................................................... 21

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

{2353231.DOC;}

iv

*Vizcaino v. Microsoft Corp.*
290 F.3d 1043 (9th Cir. 2002)........................................................................ 30, 31

*Wang v. Chinese Daily News*
231 F.R.D. 602 (C.D. Cal. 2005)........................................................................ 17

*Wright v. Linkus Enter, Inc.*
259 F.R.D. 468 (E.D. Cal. 2009)........................................................................ 35

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)........................................................................ 21


### *State Statutes*


California Business and Professions Code
§§17200, et seq.................................................................. 6, 13, 18, 27

California Code of Civil Procedure
§1021.5................................................................................ 13
§§1510, et seq. ...................................................................... 11, 14

California Labor Code
§201.................................................................................... 6, 13, 18
§202.................................................................................... 6, 13, 18
§203.................................................................................... 6, 13, 18
§218.5.................................................................................. 13
§226.................................................................................... 6, 13
§226.2.................................................................................. 6, 13, 18
§226.3.................................................................................. 6, 13, 18
§226.7.................................................................................. 6, 13, 18
§510.................................................................................... 6, 13, 18
§512.................................................................................... 6, 13, 18
§558.................................................................................... 13, 18
§1174................................................................................... 6, 13, 18
§1174.5................................................................................. 6, 13, 18
§1194................................................................................... 6, 13, 18
§1194.2................................................................................. 6, 13, 18
§1194.3................................................................................. 6, 13, 18
§1197................................................................................... 6, 13, 18
§1197.1................................................................................. 6, 13, 18
§2698................................................................................... 7
§2699(i)................................................................................ 10, 14
§2699(1)(2)............................................................................ 14
§2802................................................................................... 7, 13, 18


California Private Attorney General Act of 2004 ("PAGA")........................ 6, 14

weintraub tobin chediak coleman grodin
LAW CORPORATION

{2353231.DOC;}                    v                    Memorandum of Points & Authorities ISO Motion for
Preliminary Approval of Class Settlement
3:16-cv-04889-RS

### *Federal Statutes*

Federal Rules of Civil Procedure

Rule 23(a) ................................................................................................... 16, 17, 19
Rule 23(a)(1) ............................................................................................... 17
Rule 23(a)(2) ............................................................................................... 17
Rule 23(a)(3) ............................................................................................... 19
Rule 23(a)(4) ............................................................................................... 20
Rule 23(b)(3) .............................................................................. 16, 17, 21, 22, 34
Rule 23(b)(3)(A) .......................................................................................... 22
Rule 23(b)(3)(B) .......................................................................................... 22
Rule 23(b)(3)(C) .......................................................................................... 22
Rule 23(c)(2)(B) .......................................................................................... 34
Rule 23(c)(3) ............................................................................................... 34
Rule 23(e) ................................................................................................... 15
Rule 23(e)(1) ............................................................................................... 15, 34
Rule 23(e)(2) ............................................................................................... 15, 23
Rule 23(g) ................................................................................................... 22
Rule 23(g)(1)(A) .......................................................................................... 22
Rule 23(g)(1)(B) .......................................................................................... 22

### *Miscellaneous*

Class Action Fairness Act ("CAFA") ......................................................... 13, 14

Fair Labor Standards Act ............................................................................ 13, 18

Federal Judicial Center, Manual for Complex Litigation
  § 21.632, p. 473 (4th ed. 2008) ................................................................ 16

IWC Wage Order 4 ..................................................................................... 6, 13, 18

weintraub tobin chediak coleman grodin
LAW CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Valerie Cashon ("Plaintiff" or "Representative Plaintiff") seeks an order from the Court: (1) certifying a settlement class for purposes of settling the above-captioned putative class action; (2) approving the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims on the terms set forth in the Parties' Class Action Settlement Agreement and Stipulation ("Settlement Agreement");[2] (3) preliminarily approving the proposed Class Settlement of this class action on the terms set forth in the Settlement Agreement; (4) preliminarily approving the requested Incentive Award to the Representative Plaintiff; (5) setting a final fairness hearing; (6) directing Notice to Class Members of the PAGA Settlement, proposed Class Settlement and Fairness Hearing; and (7) dismissing the PAGA Claims asserted in the Action with prejudice as to the Plaintiff and all PAGA Releasees, who are those individual who were employed by either Kindred Healthcare Operating, Inc. or Gentiva Certified Healthcare Corp. or one of its/their direct or indirect subsidiaries to provide skilled home health care services in California as Clinicians or piece rate employees at any time from August 24, 2012 through and including the date the Preliminary Approval Order is entered by the Court,  and permanently enjoining all PAGA Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties.

The Class is comprised of approximately 1,600 individuals as of December 2016 who were employed by either Kindred Healthcare Operating, Inc. ("Kindred") or Gentiva Certified Healthcare Corp. ("Gentiva") or one of its/their direct or indirect subsidiaries to provide skilled home health care services in California as Clinicians or piece rate employees at any time from August 24, 2012 through and including the date the Preliminary Approval Order is entered by the Court, according to the payroll records of Kindred and Gentiva. Plaintiff alleges that Defendants Kindred and Gentiva violated multiple provisions of the California Labor Code, the applicable California Industrial Welfare Commission Wage Order ("IWC Order"), the Fair Labor Standards

---

[2] All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Class Action Settlement Agreement and Stipulation.

weintraub tobin chediak coleman grodin
law corporation

1  Act, and California's Unfair Competition Law by, among other things, failing to pay for rest and
2  meal breaks and nonproductive time, failing to pay for all hours worked, failing to pay minimum
3  wage for all hours worked, failing to provide accurate wage statements, failing to keep accurate
4  payroll records, failing to pay overtime compensation, failing to provide reimbursements for
5  business expenses and failing to provide meal or rest periods. Plaintiff, on behalf of herself and all
6  others similarly situated, seeks to recover statutory damages, statutory and civil penalties, an
7  award of unpaid wages and overtime and meal period and rest period compensation, liquidated
8  damages and restitution of all amounts owed by Defendants Kindred and Gentiva.

9  As set forth more fully below, under the terms of the proposed Settlement, Defendants
10 Kindred and Gentiva will make a $12,000,000 non-reversionary payment in full settlement of all
11 the claims in the litigation, including all claims for attorney's fees and costs. After deductions are
12 made from the Gross Settlement Fund for the PAGA Payment, administrative fees and costs,
13 payment of reasonable attorney's fees and costs reimbursement to Class Counsel, subject to Court
14 approval, and an Incentive Award to the Representative Plaintiff, subject to Court approval, the
15 estimated amount of the Net Settlement Fund that will be available for distribution to Class
16 Members is at least $8,665,000, less employer's share of Employer's Taxes on the Individual
17 Settlement Payments and the Incentive Award which are to be paid from the Gross Settlement
18 Fund. Not taking into account the Employer's Taxes for purposes of this calculation, a reasonable
19 projection of the average per-Class Member recovery is approximately $5,415. For obvious
20 reasons, long term employees within the Settlement Period will receive a greater recovery.

21 This is a fair, reasonable, and non-collusive settlement. The Settlement was the product of
22 vigorous, arms-length negotiations between the Parties including, without limitation, two
23 mediations before Michael E. Dickstein, Esq., a highly-respected neutral mediator who specializes
24 in wage and hour mediations. Those negotiations and mediations led to an agreement to settle the
25 case and execution of a preliminary Settlement Term Sheet and, ultimately, the Settlement
26 Agreement. The negotiations were conducted after the Parties engaged in extensive and contested
27 litigation, including discovery of hundreds of pages of documents and extensive payroll records
28 for Class Members over the entire Settlement Period, reviewed and analyzed timekeeper data for

{2345443.DOC;6}

5

weintraub tobin chediak coleman grodin
law corporation

1    Class Members over the entire Settlement Period, engaged in extensive motion practice before the
2    Court, and deposed Plaintiff and several persons most qualified (PMQ) in connection with
3    approximately 20 separate topics. Accordingly, Class Counsel is well-prepared and experienced in
4    evaluating the risks and potential value of the claims at issue in this litigation.

5         This case meets all the requirements for certification of a settlement class, approval of the
6    PAGA Settlement, preliminary approval of the proposed Class Settlement, distribution of the
7    Class Notice of the PAGA Settlement and proposed Class Settlement to Class Members, and the
8    setting of a final fairness hearing to decide whether to finally approve the Class Settlement as
9    being fair, reasonable, and adequate. Plaintiff, therefore, respectfully submits that the Court should
10   enter an order so finding, and order all further relief requested by the Motion as reflected in the
11   proposed order submitted herewith.

12                        **II. CAUSES OF ACTION AND PROCEDURAL BACKGROUND**

13        On August 24, 2016, Plaintiff, on behalf of herself and all others similarly situated,
14   commenced the Action against Defendants Kindred and Gentiva in the United States District
15   Court, Northern District of California and alleged the following causes of action: (1) Failure to
16   Pay Piece Rate Employees for Rest and Meal Breaks, and Nonproductive Time in violation of Cal.
17   Labor Code §226.2; (2) Failure to Pay for all Hours Worked in violation of Cal. Lab. Code §§
18   226.2, 510, 1194; IWC Wage Order 4; (3) Failure to Pay Minimum Wage for all Hours Worked in
19   violation of Cal. Lab. Code §§ 226.2, 1194, 1194.2, 1194.3, 1197, 1197.l; (4) Failure to Provide
20   Accurate Wage Statements in violation of Cal. Labor Code §§ 226, 226.2 & 226.3; (5) Failure to
21   Keep Accurate Payroll Records in violation of Cal. Labor Code §§ 226.2, 1174 & 1174.5; (6)
22   Failure to Pay Overtime Compensation (Cal. Labor Code §§ 510, 1194; Wage Order 4); (7)
23   Failure to Provide Meal Periods in violation of Cal. Labor Code§§ 226.7, 512, IWC Wage Order
24   4; (8) Failure to Provide Rest Periods in violation of Cal. Labor Code §§ 226.7 and IWC Wage
25   Order 4; (9) entitlement to Waiting Time Penalties under Cal. Labor Code §§ 201, 202 & 203; and
26   (10) Violations of the Unfair Competition Law pursuant to Cal. Bus. & Prof. Code §§ 17200, et
27
28

weintraub **tobin** chediak coleman grodin
law corporation

seq.[3] On August 23, 2016 and September 20, 2016, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorney General Act of 2004 (Cal. Labor Code §§ 2698 et seq.) and, following the expiration of the statutory waiting period, Plaintiff filed the Amended Class Action Complaint in the Action on January 26, 2017 re-alleging each of the causes of action in the original complaint and alleging the following additional cause of action: (11) Violations of the Private Attorney General Act of 2004 ("PAGA") (Cal. Labor Code §§ 2698, et seq.).[4] Pursuant to the terms of the Settlement Agreement, Plaintiff will file a Second Amended Complaint for settlement purposes to add a cause of action for violation of California Labor Code section 2802, seeking reimbursement on behalf of Class Members for any and all business expenses, including but not limited to mileage, cellphone expenses, internet services, office supplies, work equipment, and automobile-related expenses, and a cause of action for violation of the Fair Labor Standards Act.

Defendants answered Plaintiff's original complaint on October 11, 2016, and answered the Amended Class Action Complaint on February 9, 2017 denying all allegations and asserting numerous affirmative defenses.[5] In furtherance of the Settlement Agreement, the Parties have stipulated that the deadline for Defendants to file their responsive pleading to the Second Amended Complaint shall be stayed pending settlement, such that Defendants would not need to file a responsive answer should the PAGA Settlement and the Class Settlement be approved by the Court. In November 2016, the Parties agreed to participate in an early mediation. Defendants provided Plaintiff with certain information and timekeeper data related to Plaintiff's claims and the putative class in advance of the mediation. The initial mediation took place on April 3, 2017 but proved unsuccessful.[6]

///

---

[3] Declaration of Anthony M. Perez, Jr. in Support of Unopposed Motion for Order Certifying Class and Preliminarily Approving Class Action Settlement ("Perez Decl."), ¶ 16; Complaint, Dkt. No. 1.

[4] Perez Decl., ¶ 17; Amended Complaint, Dkt. No. 38.

[5] Perez Decl., ¶ 18; Answer to Complaint, Dkt. No. 20 and Answer to Amended Complaint, DKT. No. 44.

[6] Perez Decl., ¶ 19.

weintraub **tobin** chediak coleman grodin
law corporation

1   Following the initial unsuccessful mediation, Class Counsel conducted significant

2   discovery, research and investigation in furtherance of the prosecution of the Action. This

3   discovery, investigation, research and prosecution included, among other things, (a) multiple

4   conferences with Plaintiff and Defendants' counsel; (b) inspection and analysis of hundreds of

5   pages of documents and other information produced by Plaintiff and Defendants formally and

6   informally during the litigation of the Action and in preparation for the mediation(s); (c) extensive

7   depositions of Defendants' Rule 30(b)(6) Persons Most Qualified regarding over 20 separate

8   topics and issues; (d) preparing for, and defending, Plaintiff's deposition; (e) analysis of the

9   numerous legal positions taken by Defendants; (f) investigation into the viability of class treatment

10  of the claims asserted in the Action; (g) analysis of potential class-wide damages, including

11  information sufficient to understand Defendants' potential defenses thereto; (h) research of the

12  applicable law with respect to the Claims asserted in the Complaint as well as the potential

13  defenses thereto; (i) research and preparation of extensive briefing regarding class waiver and

14  arbitration issues; and (j) assembling and analyzing extensive data and information for calculating

15  damages in coordination with retained experts.[7] Ultimately, the Parties determined that the

16  estimated size of the Class is approximately 1,600 Class Members as of December 2016.[8]

17  On November 20, 2017, Defendants, Defendants' counsel, Plaintiff and Class Counsel, on

18  behalf of the Plaintiff and the putative class, participated in a second mediation before Michael E.

19  Dickstein, Esq., a highly-respected neutral mediator with offices in San Francisco, California and

20  Toronto, Canada, who specializes in wage and hour mediations, in a final attempt to resolve all

21  disputes related to the Action.[9] With mediator Dickstein's assistance, the Parties agreed, subject to

22  approval by the Court, to the Settlement of the Action. The Parties negotiated and executed a

23  Class Action Settlement Agreement and Stipulation ("Settlement Agreement"), filed concurrently

24  herewith as **Exhibit A** to the Perez Declaration.[10] The Settlement Agreement provides for the full

25

26  [7] Id. at ¶ 20.

27  [8] Id. at ¶ 23.

    [9] Id. at ¶ 24.

28  [10] Id. at ¶¶ 2, 25; Exh. A thereto.

weintraub **tobin** chediak coleman grodin
law corporation

1   settlement and release of the PAGA Claims and those class and representative claims
2   encompassed by the Second Amended Complaint and otherwise sets forth the full terms of the
3   proposed settlement which is before the Court for approval.[11]

4   ## III. KEY TERMS OF THE PROPOSED SETTLEMENT

5   While the full terms of the Settlement are set forth in the Settlement Agreement filed
6   concurrently herewith, the material terms are as follows:

7   **A.    The Settlement Class.**  The settlement Class is defined as follows: "all persons
8   who were employed by either Kindred Healthcare Operating, Inc. or Gentiva Certified Healthcare
9   Corp. or one of its/their direct or indirect subsidiaries to provide skilled home health care services
10   in California as Clinicians or piece rate employees at any time from August 24, 2012 through and
11   including the date the Preliminary Approval Order is entered by the Court." The term "Clinicians"
12   includes per diem, part-time and full-time home health aides, occupational therapists, occupational
13   therapist assistants, physical therapists, physical therapy assistants, registered nurses, licensed
14   practical nurses, licensed vocational nurses, medical social workers, nursing assistants,
15   speech/language pathologists, speech/language therapists, and other clinicians paid on an hourly or
16   per visit basis.[12] The settlement Class is substantially the same as the class proposed in Plaintiff's
17   Amended Complaint on file herein.[13]

18   **B.    $12,000,000 Non-Reversionary Gross Settlement Fund.** The Settlement provides
19   for Defendants to make a non-reversionary settlement payment to the Class of $12,000,000 in
20   settlement of all claims in the Action, *i.e.* Gross Settlement Fund.[14] After payments are made for
21   (1) Class Counsel's Fees and Expenses; (2) the Plaintiff's Incentive Award; (3) Administrative
22   Expenses; (4) the PAGA Payment; and (5) all Employers' Taxes, the entire remainder (*i.e.* the Net
23   Settlement Fund) shall be distributed to participating Class Members who timely submit a valid
24   and complete Claim Form and do not opt out of the Class ("Claimants") on a pro rata basis (based

25

26   [11] Perez Decl., ¶¶ 2, 26; Exh. A.

27   [12] Perez Decl., ¶¶ 2, 25; Exh. A, §§ 2.6, 2.13.

[13] Perez Decl., ¶¶ 2, 27; Exh. A, §§ 2.6, 2.13; Amended Complaint, Dkt. No. 38, p. 3:3-5.

28   [14] Perez Decl., ¶¶ 2, 28; Exh. A, § 3.1.

weintraub **tobin** chediak coleman grodin
law corporation

on the number of Days Worked during the Settlement Period).[15] During the Settlement Period, Claimants were paid piece rates for various types of patient visits, a designated hourly rate for other employment related activities and/or were, arguably, subject to minimum wage ($10.50 per hour in 2017) for other employment activities.[16]

**C.** **Attorneys' Fees and Costs.** Defendants will not oppose an application by Class Counsel for an award of Class Counsel's Fees and Expenses up to 25% of the Gross Settlement Fund, or $3,000,000, plus reimbursement of costs to a maximum of $125,000.[17]

**D.** **Incentive Award to Representative Plaintiff.** Defendants will not oppose an application to the Court for an award of up to $20,000 as an Incentive Award in recognition of her services on behalf of the Class. Plaintiff participated in the mediation process, reviewed extensive discovery, was present during Defendants' PMQ depositions and assisted in discovery planning and analysis. Plaintiff was actively involved as a Class representative over and above typical Class Representative involvement.[18]

**E.** **PAGA Payment.**

The Settlement allocates $150,000 of the Gross Settlement Fund as PAGA penalties sought as part of the proposed PAGA Settlement. Pursuant to Labor Code Section 2699(i), 75% of these penalties are to be paid to the State of California Labor & Workforce Development Agency ("LWDA"). Accordingly, the Settlement provides for $112,500 to be paid to the State of California from the Gross Settlement Fund. The remaining $37,500 will be paid out of the Gross Settlement Fund and will be distributed to all PAGA Releasees pro rata based on the number of Days Worked during the Settlement Period, as a fraction of the total Days Worked by all Class Members during the Settlement Period. This payment is the PAGA payment to the PAGA Releasees and shall be treated entirely as penalties for which an IRS Form 1099 misc may be

---

[15] Perez Decl., ¶¶ 2, 28; Exh. A, § 3.1.

[16] Perez Decl., ¶ 28.

[17] Perez Decl., ¶¶ 2, 29; Exh. A, § 3.1(a).

[18] Perez Decl., ¶¶ 2, 30; Exh. A, § 3.1(b).

weintraub **tobin** chediak coleman grodin
law corporation

issued.[19] Funds for checks that are not cashed by PAGA Releasees after 90 days shall escheat to the State of California and be submitted to the State of California unclaimed property fund in the name of the PAGA Releasee who is the payee of the check pursuant to California Code of Civil Procedure section 1510 et seq. (escheat laws).[20]

**F.    Distribution of the Net Settlement Fund to Claimants.** Under the Settlement, the portion of the Gross Settlement Fund remaining after deduction of Administrative Fees and the above-described payments of Class Counsel's Fees and Expenses, the Incentive Award, all Employers' Taxes, and the PAGA Payment - the Net Settlement Fund, presently projected to be no less than $8,665,000, less Employers' Taxes - will be distributed among all Class Members who do not properly and timely exclude themselves from the Class ("opt out") and who timely submit a valid and complete Claim Form to the Settlement Administrator ("Claimants").[21] While Class Members do not need to take any action to receive their share of the PAGA Payment, they are required to timely submit a Claim Form to receive an additional Individual Settlement Payment from the Net Settlement Fund.[22]

Funds for checks that are not cashed by Claimants after 90 days shall escheat to the State of California and be submitted to the State of California unclaimed property fund in the name of the Claimant who is the payee of the check pursuant to California Code of Civil Procedure section 1510 et seq. (escheat laws).[23]

Pursuant to the Settlement, for tax purposes, 33 1/3 % of the Individual Settlement Payment distributed to each Claimant is allocated to wages, and 66 2/3 % is allocated to penalties and interest. For amounts allocated to wages, income taxes and the employee's share of payroll taxes will be withheld from Claimants' Individual Settlement Payment.[24]

---

[19] Perez Decl., ¶¶ 2, 31; Exh. A, § 3.1(c).

[20] Perez Decl., ¶¶ 2, 35; Exh. A, § 6.9(b).

[21] Perez Decl., ¶¶ 2, 33; Exh. A, § 3.1(e), (f).

[22] Perez Decl., ¶¶ 2, 34; Exh. A, §§ 6.3, 6.4(f), 6.5.

[23] Perez Decl., ¶¶ 2, 35; Exh. A, § 6.9(b).

[24] Perez Decl., ¶¶ 2, 36; Exh. A, § 3.2(a).

weintraub tobin chediak coleman grodin
law corporation

**G.**     **Plan of Distribution of the Net Settlement Fund.** The Settlement sets forth a Plan of Distribution ("Plan") for distributing the Net Settlement Fund among Claimants. Each Claimant shall be entitled to a pro rata portion of the Net Settlement Fund. Individual Settlement Payments will be awarded to Claimants from the Net Settlement Fund based on the number of Days Worked by an individual Claimant during the Settlement Period divided by the total number Days Worked by all Claimants during the Settlement Period.[25] Class Counsel has determined that the average rate of pay for Class Members during the statutory period was approximately $49.95 per hour, which Defendants dispute. The Parties recognize that Class Members received: 1) piece rates based on the nature of patient appointment; 2) an hourly rate designated for non-piece rate employment activities; and/or 3) other types of employment-related activities that may be subject to California minimum wage [$10.50 per hour].[26] This formula used to determine Individual Settlement Payments is expressed as follows:

$$\frac{\text{\# Days Worked by Individual Claimant}}{\text{\# Days Worked by All Claimant}} = \text{\% of Net Settlement Fund Payable to Individual}$$

[27]

**H.**     **Release of All Settled Claims**. Under the terms of the Settlement, as of the Effective Date and to the maximum extent permitted by law, the Plaintiff, and all Plaintiff Class Members (i.e., all Class Members who do not properly opt-out) and all persons purporting to act on the Plaintiff Class Members' behalf or purporting to assert a claim under or through them, hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and all of the Released Parties of and from any and all of the following claims:     (a)     all disputes, claims, and/or causes of action pleaded or which could have been pleaded in and arising from the facts, claims and/or allegations in the Complaint and Plaintiff's August 23, 2016 and September 20, 2016 letters to the LWDA concerning Defendant(s), and all claims (including penalties arising from such claims) under Cal. Labor Code

---

[25] Perez Decl., ¶¶ 2, 37; Exh. A, § 3.1.

[26] Perez Decl., ¶¶ 2, 38; Exh. A, § 3.1.

[27] Perez Decl., ¶ 37.

weintraub tobin chediak coleman grodin
law corporation

1 §§ 201-203, 226, 226.2, 226.3, 226.7, 218.5, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1194.3,

2 1197, 1197.1, 2802, Cal. Civil Proc. Code § 1021.5, Cal. Bus. & Prof. Code §§ 17200 *et seq.*,

3 California IWC Wage Orders, the Minimum Wage Orders, the Fair Labor Standards Act,

4 damages, penalties, interest, attorney's fees, costs, and other amounts recoverable under the causes

5 of action under California law and/or federal law, and interest, attorney's fees and costs based in

6 whole or in part on the allegations and/or claims in the Action during the Settlement Period; and

7 (b)      all claims of any and every nature based on off-the-clock work, minimum wage,

8 overtime, meal and rest break claims, paycheck-related claims, payroll records maintenance, wage

9 statement claims, business expense reimbursement claims, waiting time penalties, California IWC

10 Wage Order claims and Unfair Competition Law claims that arose during the Settlement Period.[28]

11 **I.     Release of PAGA Claims.** Upon the Court's approval of the PAGA Payment and

12 this release of PAGA Claims, Plaintiff and the PAGA Releasees and all persons purporting to act

13 on the PAGA Releasees' behalf or purporting to assert a claim under or through them, hereby do

14 and shall be deemed to have fully, finally, and forever released, settled, compromised,

15 relinquished and discharged any and all of the Released Parties of and from any and all PAGA

16 claims premised in whole or in part on any of the claims set forth in sections (a) and (b) of Section

17 III(H) above (collectively, the "PAGA Claims"). The PAGA Releasees will not be required to

18 submit a Claim Form in order to be issued a check for their share of the PAGA Payment and will

19 not have the opportunity to opt out of, or object to, the PAGA Payment and release of the PAGA

20 Claims set forth in this Paragraph. The PAGA Releasees are bound by the release of the PAGA

21 Claims regardless of whether they cash their PAGA Payment Check.

22 **J.     CAFA Notice.** The Court's subject matter jurisdiction over the Action is based on

23 the Class Action Fairness Act ("CAFA"). Pursuant to the requirements of the CAFA, within ten

24 (10) days after this Settlement is filed in Court, Defendants will serve the United States Attorney

25 ///

26 ///

27

28 [28] Id. at ¶¶ 2, 39; Exh. A, § 4.3.

weintraub **tobin** chediak coleman grodin
law corporation

{2345443.DOC;6}

13

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

General and appropriate state officials with a notice of the Settlement. The notice shall comply with the requirements of the CAFA.[29]

## IV. DISCUSSION RE PAGA SETTLEMENT

California Labor Code section 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to the PAGA. The California Supreme Court has held that an employee who sues an employer under the PAGA need not satisfy class action requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009). For example, "PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014).

Plaintiff seeks the Court approve the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims on the terms set forth in the Parties' Settlement Agreement. Under the Settlement Agreement, $150,000 of the Gross Settlement Fund is allocated as PAGA penalties. Pursuant to Labor Code Section 2699(i), 75% of these penalties are to be paid to the LWDA and the remaining 25% will be distributed to all PAGA Releasees pro rata based on the number of Days Worked during the Settlement Period, as a fraction of the total Days Worked by all PAGA Releasees during the Settlement Period. This payment is the PAGA payment to the PAGA Releasees and shall be treated entirely as penalties for which an IRS Form 1099 misc may be issued.[30]

Under the proposed PAGA Settlement, the PAGA Payment Checks shall be distributed to PAGA Releasees with the Class Notice, which describes, in part, the PAGA Settlement, and the Claim Form as described more fully below and in the Settlement Agreement. Funds for PAGA Payment Checks that are not cashed by PAGA Releasees after 90 days shall escheat to the State of California and be submitted to the State of California unclaimed property fund in the name of the PAGA Releasee who is the payee of the check pursuant to California Code of Civil Procedure section 1510 et seq. (escheat laws).[31]

---

[29] Perez decl., ¶¶ 2, 40; Exh. A, §6.10.

[30] Perez Decl., ¶¶ 2, 31; Exh. A, § 3.1(c).

[31] Perez Decl., ¶¶ 2, 35; Exh. A, § 6.9(b).

weintraub **tobin** chediak coleman grodin
law corporation

This proposed PAGA Settlement is fair, reasonable, and adequate to all concerned, and not the product of fraud, collusion, or overreaching. The proposed PAGA Settlement is the product of informed negotiations. As described more fully below, prior to negotiating and reaching final agreement on the proposed settlement in this case, Plaintiff's counsel performed significant work to investigate, research, and analyze the claims, defenses, legal and factual issues, and potential recovery in this case, including pre- and post-filing investigation, legal research and analysis.[32] Prior to entering into any settlement discussions, Plaintiff's counsel also carefully evaluated the PAGA Claims at issue in the Action.[33] The settlement was the result of arm's length settlement negotiations facilitated by the well-known mediator, Michael Dickstein, Esq.

Accordingly, based on the terms set forth in the Parties' Settlement Agreement, Plaintiff respectfully requests the Court approve the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims, dismiss the PAGA Claims asserted in the Action with prejudice as to the Plaintiff and all PAGA Releasees, and permanently enjoin all PAGA Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties.

## V. DISCUSSION RE CLASS SETTLEMENT

### A.   Procedure for Approving a Class Action Settlement.

The claims of a certified class may be settled only with the Court's approval. Fed. R. Civ. P. 23(e). In order to approve a settlement that would bind class members, the Court must find after a hearing that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before making such a finding, the Court must direct notice to all class members who would be bound, with all class members having the right to object to the proposed settlement. Fed. R. Civ. P. 23(e)(1),(2).

The procedure for deciding whether to approve a proposed class action settlement is generally a two-step process involving a preliminary approval stage and a final fairness hearing.

---

[32] Perez Decl., ¶¶ 19-20.

[33] Id. at ¶ 20.

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

weintraub tobin chediak coleman grodin
law corporation

1  At the preliminary approval stage, if the case has not already been certified as a class action, "[t]he

2  judge should make a preliminary determination that the proposed class satisfie[s] the criteria set

3  out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Federal Judicial Center,

4  Manual for Complex Litigation § 21.632, p. 473 (4th ed. 2008); *see In re Wireless Facilities, Inc.*

5  *Sec. Litig.*, 253 F.R.D. 630, 634 (S.D. Cal. 2008).

6        Under Federal Rule of Civil Procedure 23(a), a class action is only permissible where the

7  class is so numerous that joinder of all members is impracticable, there are questions of law or fact

8  common to the class, the claims of the representative parties are typical of the claims of the class,

9  and the representative parties will fairly and adequately protect the class's interests. For purposes

10  of settlement, Plaintiff is seeking certification under Rule 23(b)(3). Under that Rule, provided that

11  Rule 23(a) is satisfied, a class action may be maintained if the Court finds that questions of law or

12  fact common to the class predominate over any questions affecting only individual members, and

13  that a class action is superior to other available methods for fairly and efficiently adjudicating the

14  controversy. Fed. R. Civ. P. 23(b)(3).

15        The Court must then determine that the settlement appears to be one that would be capable

16  of being approved after the final fairness hearing - i.e., that there are no factors appearing that

17  would make the settlement other than fair, reasonable, and adequate. *Hanlon v. Chrysler Corp.*,

18  150 F.3d 1011, 1026 (9th Cir. 1998); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549,

19  (N.D. Cal. Oct. 15, 2009) (Walker, J.). Assuming the court makes both of these determinations,

20  "[t]he court then approves the form and manner of notice [to the class] and sets a final fairness

21  hearing, where it will make a final determination on the fairness of the class settlement." *In re*

22  *Wireless Facilities*, 253 F.R.D. at 634.

23      **B.**   **The Court Should Certify a Settlement Class.**

24        The settlement class to be certified is defined as follows: "all persons who were employed

25  by either Kindred Healthcare Operating, Inc. or Gentiva Certified Healthcare Corp. or one of

26  its/their direct or indirect subsidiaries to provide skilled home health care services in California as

27  Clinicians or piece rate employees at any time from August 24, 2012 through and including the

28  date the Preliminary Approval Order is entered by the Court." The term "Clinicians" includes per

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

diem, part-time and full-time home health aides, occupational therapists, occupational therapist assistants, physical therapists, physical therapy assistants, registered nurses, licensed practical nurses, licensed vocational nurses, medical social workers, nursing assistants, speech/language pathologists, speech/language therapists, and other clinicians paid on an hourly or per visit basis. This case meets all the requirements for maintaining a class action for purposes of settling all non-PAGA claims pleaded in the Second Amended Complaint. Plaintiff is not seeking class certification of Plaintiff's PAGA claims. As discussed below, this case satisfies the requirements for class certification under FRCP 23(a) and 23(b)(3).

### 1. The Numerosity Requirement is Satisfied.

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Celano v. Marriot International, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007); *Wang v. Chinese Daily News* 231 F.R.D. 602, 606 (C.D. Cal. 2005). Generally, the numerosity requirement is satisfied when the class comprises forty (40) or more members. *Celano, supra*, 242 F.R.D. 544 at 549.

Here, the numerosity requirement is satisfied because there are approximately 1,600 Class Members as of December 2016. Class Members' identities can be determined from the records of Defendants Kindred and Gentiva.[34] When a class is as large as this one, "numbers alone are dispositive." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. III. 1986).

### 2. There are Common Questions of Law and Fact.

The second threshold to certification requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Plaintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories." *Dukes v. Wal-*

---

[34] Perez Decl., ¶¶ 2, 23, 41(a); Exh. A, §1.4.

weintraub tobin chediak coleman grodin
law corporation

*Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007). "One significant issue common to the class may be sufficient to warrant certification." *Id.* This commonality requirement must be "constructed permissively." *Hanlon v. Chrysler Corp., supra* 150 F.3d at 1019. Plaintiffs need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

There are questions of law or fact common to the Class, including but not limited to: whether Defendants have violated California Labor Code § 226.2 by failing to pay piece rate employees for rest and meal breaks and nonproductive time; whether Defendants violated California Labor Code §§ 226.2, 510, 1194 and IWC Wage Order 4 by failing to pay employees for all hours worked; whether Defendants violated California Labor Code §§ 226.2, 1194, 1194.2, 1194.3, 1197 and 1197.1 by failing to pay minimum wage for all hours worked; whether Defendants violated California Labor Code §§ 226, 226.2 and 226.3 by failing to provide accurate wage statements; whether Defendants violated California Labor Code §§ 226.2, 1174 and 1174.5 by failing to maintain accurate payroll records; whether Defendants violated California Labor Code §§ 510 and 1194 and IWC Wage Order 4 by failing to pay overtime compensation; whether Defendants violated California Labor Code §§ 226.7 and 512 and IWC Wage Order 4 by failing to provide rest and meal periods; whether Defendants are liable for waiting time penalties pursuant to California Labor Code §§ 201, 202, 203; whether Defendants violated California Business and Professions Code §§ 17200, et seq. by failing to pay minimum wages and overtime wages; whether Defendants violated California Labor Code section 558; whether Defendants violated California Labor Code section 2802 by failing to reimburse any and all business expenses; and whether Defendants violated the Fair Labor Standards Act.[35]

/ / /

---

[35] Perez Decl., ¶ 41(b).

weintraub tobin chediak coleman grodin
law corporation

weintraub **tobin** chediak coleman grodin
law corporation

### 3.    The Representative Plaintiff's Claims are Typical of the Class's Claims.

Rule 23 next requires that a Plaintiff's claims be typical of those of the class. (Fed. R. Civ. P. 23(a)(3).) "Typicality focuses on the relationship of facts and issues and between the class and its representatives." *Dukes, supra*, 509 F.3d at 1184, fn. 12. (citations omitted) - "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical; some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir, 1990). The Supreme Court has observed that, in practice, Title commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982).

Typicality refers to the "nature of the claim ... of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

The Representative Plaintiff's non-PAGA claims are typical of the Class's non-PAGA claims, in that her claims arise from the same alleged events and course of conduct as the Class's claims and are based on the same legal theories. As persons employed by either Kindred and/or Gentiva to provide skilled home health care services in California as Clinicians or piece rate employees, Plaintiff's claims for unpaid wages, failure to provide accurate wage statements, failure to maintain accurate payroll records, and penalties are the same as those of all other class members.[36]

/ / /

/ / /

---

[36] Id. at ¶ 41(c).

{2345443.DOC;6}                                19

weintraub **tobin** chediak coleman grodin
law corporation

### 4.    Plaintiff will Fairly and Adequately Represent the Class.

The final Rule 23(a) prerequisite requires that the proposed Class Representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class; and (2) that Plaintiff is represented by qualified and competent counsel. *Dukes, supra*, 509 F.3d at 1185.

The Representative Plaintiff will fairly and adequately represent the Class's interests. Plaintiff has the same interests as all members of the Class – all have been harmed by Defendants' alleged unlawful wage and hour practices.[37] Plaintiff has diligently prosecuted this action to date including, but not limited to, providing Class Counsel with information to help them prepare the case, responding to Class Counsel's request for additional information, being interviewed by Class Counsel regarding the claims at issue in this case, and being deposed by Defendants' counsel.[38] Plaintiff is represented by experienced and competent attorneys who have sufficient experience in complex litigation, and have extensive experience in employment law matters in general.[39]

There are no conflicts of interest between Plaintiff and Class Members. Given the similarity of the claims asserted and remedies sought by Class Members in this case, it is hard to imagine how there could be any conflicts. Defendants Kindred and Gentiva have no basis for asserting against Plaintiff any unique defenses that they could not assert against any other Class Member. Nor do Defendants have any basis for suggesting that Plaintiff lacks sufficient zeal or competence.[40]

### 5.    Common Questions of Law and Fact Predominate.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of

---

[37] Id. at ¶ 41(c).

[38] Id. at ¶¶ 30, 41(d).

[39] Id. at ¶¶ 5-15; Post Decl., ¶ 3-12.

[40] Perez Decl., ¶ 41(f).

common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

The requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because common questions of law and fact common to Class Members predominate over any questions affecting only individual members and a settlement class is superior to other available methods for the fair and efficient adjudication of the controversy. Here, the common questions of law and fact that predominate over any individual inquiries include all of the matters set forth in section IV.B.(2) above. On account of the Settlement, the Court need not consider any trial manageability issues that might otherwise bear on the propriety of class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 6.  A Class Action is Superior to Alternate Methods of Adjudication.

To determine whether the superiority requirements of Rule 23 (b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund, supra,* 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternatives exists").

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present

/ / /

weintraub tobin chediak coleman grodin
law corporation

{2345443.DOC;6}

21

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

intractable management problems." *Amchem Products Inc., supra,* 521 U.S. at 620. Here, the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification.

First, Class Members have no particular interest in individually controlling the prosecution of separate actions. Any Class Members who wish to pursue a claim for reimbursement greater than an Individual Settlement Payment can opt out of the Class Settlement.[41]

Second, there is no known competing litigation regarding the statutory violations at issue.[42]

Finally, it is desirable to concentrate the issues in this forum because the class is comprised of employees who worked for Defendants Kindred and Gentiva in California.[43] Moreover, the Parties have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133741 (M.D. Fla. 1998); *Strube v. American Equity Inv. Life Insurance Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement"). The conclusion is inescapable that a class action provides the most efficient mechanism for resolving all the claims of the Class Members in this case.

## C.   Plaintiff's Counsel is Qualified to be Class Counsel.

A court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g). In appointing class counsel, the court must consider the following: (1) the work counsel has done in investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class's interests. Fed. R. Civ. P. 23(g)(1(B).

Plaintiff's counsel includes Anthony M. Perez, Jr. of Perez Law Offices and Charles L. Post of Weintraub Tobin Chediak Coleman Grodin Law Corporation. Anthony M. Perez, Jr. and

---

[41] Id. at ¶¶ 33, 41(g), Exhibit A, § 6.6.

[42] Perez Decl., ¶ 41(g); Post Decl., ¶ 34(g).

[43] Perez Decl., ¶ 41(g).

weintraub tobin chediak coleman grodin
law corporation

weintraub **tobin** chediak coleman grodin
law corporation

1    Charles Post have extensive experience handling class actions and the types of claims asserted in

2    this action, including wage and hour claims under the applicable statutory authority.[44] Plaintiff's

3    attorneys have performed extensive work to date in identifying and investigating the potential

4    claims in this action.[45] Counsel has further committed and will continue to commit adequate

5    resources to representing the class.[46]

6         For the foregoing reasons, the Court should, for settlement purposes, certify the proposed

7    Class, certify Plaintiff as the Class Representative, and appoint Plaintiff's counsel (hereinafter,

8    "Class Counsel") as class counsel.

9         **D.**    **The Class Settlement is Fair, Reasonable and Adequate.**

10         The Court may approve a settlement that will bind absent class members where there is a

11    finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The district

12    court's ultimate determination will necessarily involve a balancing of several factors which may

13    include, among others, some or all of the following: the strength of plaintiffs' case; the risk,

14    expense, complexity, and likely duration of further litigation; the risk of maintaining class action

15    status throughout the trial; the amount offered in settlement; the extent of discovery completed,

16    and the stage of the proceedings; the experience and views of counsel; the presence of a

17    governmental participant; and the reaction of the class members to the proposed settlement.

18    *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615,

19    625 (9th Cir. 1982).

20         The court does not finally determine whether the proposed settlement is fair, reasonable,

21    and adequate at the preliminary approval stage. At the preliminary stage, "[t]he Court should

22    consider whether the proposed settlement appears to be the product of serious, informed, non-

23    collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment

24    to class representatives or segments of the class and falls within the range of possible approval."

25

26    ———————————————

27    [44] Perez Decl. ¶¶ 5-15; Post Decl., ¶¶ 3-12.

     [45] Perez Decl. ¶¶ 19-20; Post Decl., ¶¶ 13-16.

28    [46] Perez Decl. ¶¶ 20, 52; Post Decl., ¶¶ 13, 45-47.

{2345443.DOC;6}      23    Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

*Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotes and citations omitted); *Dennis v. Kellogg Co.*, 2010 WL 4285011, (S.D. Cal. Oct. 14, 2010); *Chun-Hoon*, 2009 WL 3349549 at 2.

### 1.  The Proposed Class Settlement is the Product of Informed Negotiations.

The proposed settlement is the product of informed negotiations. Prior to negotiating and reaching final agreement on the proposed settlement in this case, Class Counsel performed significant work to investigate, research, and analyze the claims, defenses, legal and factual issues, and potential recovery in this case, including pre- and post-filing investigation, legal research and analysis.[47] Class Counsel's investigation and evaluation included, but was not limited to, numerous conferences with Plaintiff and Defendants' counsel, analysis of numerous legal positions taken by Defendants, investigation into the viability of class treatment of the Claims asserted in the Action, analysis of potential class-wide damages, including information sufficient to understand Defendants' potential defenses thereto, research of the applicable law with respect to the claims asserted in the Complaint as well as the potential defenses thereto and research and preparation of extensive briefing regarding class waiver and arbitration issues raised by Defendants.[48] Class Counsel also conducted significant informal and formal discovery and investigation including, without limitation, interviewing Plaintiff and other current and former employees of Defendants Kindred and Gentiva in California, reviewing and analyzing work and payroll data for the Class over the entire Settlement Period produced by Defendants both in preparation for mediations and in response to extensive written discovery requests from Class Counsel, conducting extensive depositions of Defendants' Rule 30(b)(6) Persons Most Qualified regarding over 20 separate topics and issues, and assembling and analyzing extensive data and information for calculating damages in coordination with retained experts.[49]

---

[47] Perez Decl., ¶¶ 19-20.

[48] Id. at ¶¶ 19-20.

[49] Id. at ¶¶ 19-20.

weintraub tobin chediak coleman grodin
law corporation

weintraub **tobin** chediak coleman grodin
law corporation

## 2.   The Settlement Arose from Non-Collusive, Arms-Length Negotiations.

Prior to entering into any settlement discussions, Class Counsel carefully evaluated the claims at issue in the Amended Complaint, including researching all legal authorities pertaining to all defenses to the Amended Complaint raised by Defendants (or that could have been raised by Defendants).[50] The Parties participated in two separate mediations and engaged in numerous independent negotiations among counsel.[51] The Parties negotiated aggressively and at arm's length over the amount of money Defendants Kindred and Gentiva would pay to settle all claims in the Action, including those claims alleged in the proposed Second Amended Complaint.[52] During the course of negotiations, Defendants provided Class Counsel with payroll data and other information regarding the putative class members and the pay periods at issue.[53] Class Counsel consulted with a forensic accountant, who analyzed the data provided by Defendants to establish the potential scope of damages available and identify the projected recovery for the Class.[54] Following extensive negotiations, the parties reached an agreement in principle and executed a Settlement Term Sheet following the second mediation.[55] The Parties then continued to engage in additional arm's length negotiations to reach agreement on the full terms and conditions of the proposed settlement now set forth in the Settlement Agreement.[56]

## 3.   The Settlement is Not Deficient and Does Not Grant Preferential Treatment.

The Settlement has no obvious deficiency and does not grant preferential treatment to the Representative Plaintiff, who will share in the Net Settlement Fund on the same terms as all other Claimants. (The Representative Plaintiff's application for an Incentive Award, discussed below, is

---

[50] Id. at ¶ 20.

[51] Id. at ¶¶ 19, 24.

[52] Id. at ¶ 24.

[53] Id. at ¶ 19.

[54] Id. at ¶ 19.

[55] Id. at ¶ 24.

[56] Id. at ¶¶ 2, 24, Exh. A.

1    proper under the law, and it is not a condition of settlement that the applications be granted.)[57] Nor

2    does the Settlement improperly grant preferential treatment to segments of the Class. The

3    Settlement includes a Plan of Distribution ("Plan") for distributing the Net Settlement Fund, which

4    constitutes a fair, reasonable and proper attempt to allocate Individual Settlement Payments

5    according to the amount of work performed by each Claimant in relation to all other Claimants as

6    a whole.[58] The proposed settlement falls within the range appropriate for approval.

7                              **a.    Amount of Settlement Payment.**

8         The Settlement provides for a substantial economic recovery by the Class. Defendants

9    Kindred and Gentiva will make a non-reversionary Settlement Fund payment of $12,000,000.[59]

10   The average gross (i.e., pre-tax) Individual Settlement Payment to each Claimant based on the

11   presently-projected amount of the Net Settlement Fund is approximately $5,415.[60] The recovery

12   per Claimant varies by individual based on the Plan of Distribution described above, which takes

13   into account the individual's work history in relation to the amount of time worked during the

14   Settlement Period compared to all other Claimants.[61] Class Members will need to submit a Claim

15   Form in order to receive an Individual Settlement Payment.[62]

16        As more fully discussed in the supporting Declaration of Anthony M. Perez, Jr., the

17   amount of the Gross Settlement Fund is fair and reasonable, taking into account the nature,

18   strength, and potential value of the Class's claims and the risks the Class faces from continued

19   litigation.[63] While Plaintiff is confident that all of the Class's claims and prayers for relief are

20   meritorious, Plaintiff is also cognizant that the Class faces risks and uncertainty in moving forward

21   with the litigation, including but not limited to the following: the risk that Plaintiff will not obtain

22

23   [57] Perez Decl., ¶¶ 2, 30; Exh. A, § 3.1(b).

24   [58] Perez Decl., ¶¶ 2, 37; Exh. A, § 3.1.

     [59] Perez Decl., ¶¶ 2, 28; Exh. A, § 3.1.

25   [60] Perez Decl., ¶ 33. This calculation does not take into the account the Employers' Taxes to be paid from the Gross
26   Settlement Fund and the actual size of the Class.

     [61] Id. at ¶ 37.

27   [62] Id. at ¶ 34.

28   [63] Id. at ¶¶ 41-47.

weintraub **tobin** chediak coleman grodin
law corporation

1   class certification for all of the putative class action claims; risks to Plaintiff's several theories of

2   liability for unpaid wages; the risk that Plaintiff will not be able to prove that Defendants'

3   violations of California's itemized wage statement law were "knowing and intentional"; the risks

4   associated with various arbitration agreements and class action waivers; the risk that the fact finder

5   will not fully credit Class Members' testimony regarding how many hours they worked or

6   otherwise decide not to award the Class the full measure of damages for unpaid wages sought by

7   the Class; the risk that the Court will not award the Class all or any of the liquidated damages it

8   seeks based on a finding that Defendants have acted reasonably and in good faith in concluding

9   that they have been complying with California's minimum wage rules; the risk that the Court will

10  exercise its discretion under PAGA not to award the full measure of penalties provided for in the

11  statute; the risk that the Court will rely on equitable considerations not to award the Class the full

12  measure of Section 17200 restitution sought; and the risk that it will take years of litigation before

13  the Class ever recovers any compensation, assuming the Class prevails on at least some of its

14  claims.[64]

15      In view of the foregoing, including the risks and uncertainties in the litigation, such as the

16  risk that class certification might be denied, the risk of losing some or all claims on the merits, the

17  risk of otherwise not recovering all the monetary relief sought, and the certain delay in any

18  recovery by not settling, Class Counsel believes, and Plaintiff otherwise submits, that the

19  $12,000,000 Gross Settlement Fund, less PAGA Payment, payment provided for by the Class

20  Settlement is a fair, reasonable, and adequate amount for Defendants Kindred and Gentiva to pay

21  in settlement of all non-PAGA claims in the Action.[65]

22              **b.      The Class Settlement is of Significant Value.**

23      Pursuant to *Kullar v. Foot Locker Retail, Inc*. (2008) 168 Cal.App.4th 116, Class Counsel

24  conducted a significant amount of formal and informal discovery, including extensive review and

25  analysis of voluminous documents and data, in order to evaluate the potential value and merit of

26

27  [64] Id. at ¶ 45.

28  [65] Id at. ¶¶ 46-47.

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

weintraub **tobin** chediak coleman grodin
law corporation

1    the claims. The data and information obtained in this case including, inter alia, the detailed

2    sampling of putative class members' time and pay data, allowed Class Counsel to develop a

3    damages/valuation model and complete evaluation of Defendants' defenses.[66]

4        For example, unpaid rest breaks pursuant to Labor Code section 226.2 were estimated to

5    be $4,413,916 per expert analysis. Unpaid travel between patients, per expert analysis, amounted

6    to $20,633,490. While travel time between patients was expressly stated to be part of the

7    Clinicians' piece rate, this was claimed to be non-productive time by the Class. Likewise, charting

8    time outside of the patient visit was also expressly stated as part of the Clinicians' piece rates.

9        However, no (or minimal) time card recordings were kept for rest or meal breaks taken.

10   Further, Defendants vigorously dispute Plaintiff's claims. There were also numerous time keeping

11   systems, which presented discovery issues, all of which were taken into account by Plaintiff and

12   Class Counsel in entering into the Settlement.

13                      **c.      Plan of Distribution of the Net Settlement Fund.**

14       As summarized above, the Class Settlement sets forth a Plan of Distribution ("Plan") for

15   distributing the Net Settlement Fund among Claimants. The Net Settlement Fund – which is

16   estimated to be no less than $8,665,000, less Employers' Taxes – will be disbursed to Claimants as

17   follows:

18       Each Claimant shall be entitled to a pro rata portion of the Net Settlement Fund. Individual

19   Settlement Payments will be awarded to Claimants from the Net Settlement Fund based on the

20   number of Days Worked by an individual Claimant during the Settlement Period divided by the

21   total number Days Worked by all Claimants during the Settlement Period. Class Counsel has

22   determined that the average rate of pay for Class Members was approximately $49.95 per hour

23   during the statutory period, which Defendants dispute. The Parties recognize that Clinicians

24   received: 1) piece rates based on the nature of patient appointment; 2) an hourly rate designated

25   for non-piece rate employment activities; and/or 3) other types of employment-related activities

26   that may be subject to California minimum wage [$10.50 per hour]. The formula used to

27

28   [66] Id. at ¶¶ 19-20.

weintraub **tobin** chediak coleman grodin
law corporation

determine Individual Settlement Payments is expressed as follows:

$$\frac{\text{\# Days Worked by Individual Claimant}}{\text{\# Days Worked by All Claimants}} = \text{\% of Net Settlement Fund Payable to Individual}$$

The total Individual Settlement Payment made to each Claimant shall be comprised of three amounts: 1) one third designated as wages subject to appropriate withholdings; 2) one third designated as penalties to be reported on an IRS Form 1099 Misc.; and 3) one third designated as interest to be reported on an IRS Form 1099 Misc. Applicable income taxes and applicable employer payroll taxes will be withheld for the one third portion of the Individual Settlement Payment designated as wages to each Claimant.

Taking into account the various claims and potential recoveries and associated risks at issue and the potential different Class Member work histories, the Plan cannot be said to significantly prejudice or favor any segment(s) of the Class relative to any other segment(s) of the Class. For these reasons, the Plan of Distribution of the Net Settlement Fund is fair and reasonable, and otherwise within the range of reasonableness, so as to support the granting of an order preliminarily approving the proposed Class Settlement.[67]

### d.    Settled Claims Being Released.

The release as described more fully above being granted under the Class Settlement by Plaintiff Class Members is limited to the claims pleaded in the Action and any additional claims that could have been included based on the facts alleged by Plaintiff in the Amended Complaint and Second Amended Complaint to be filed herein, and is further limited to claims that arose during the Settlement Period.[68] This is a fair and reasonable release under the circumstances of the case as described.

### E.    Attorneys' Fees and Costs Requested are Reasonable.

The compensation to be sought for Plaintiff's Counsel is also fair and reasonable. The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the

[67] Id. at ¶¶ 48-49.

[68] Id. at ¶ 2, Exh. A, § 4.3.

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

weintraub tobin chediak coleman grodin
law corporation

1   settlement for purposes of calculating common fund attorneys' fees, the courts should use a

2   "benchmark" percentage of 25% of the total fund. *Stanger v. China Elec. Motor, Inc.* 812 F.3d 734,

3   738-739 (9th Cir. 2016); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.

4   1989); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v.*

5   *Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Here, the Gross Settlement Fund

6   obtained through the efforts of Plaintiff's counsel is $12,000,000. Adhering to the benchmark

7   established by the Ninth Circuit, Plaintiff's counsel is applying for an award of attorneys' fees of

8   $3,000,000, which equals 25% of the Gross Settlement Amount.

9       Although the Court has discretion to undertake a lodestar analysis for attorneys' fees in this

10  matter, Plaintiff submits that an attorney's fee award based on a lodestar calculation would not be

11  appropriate in this case. Several courts have expressed frustration with the lodestar approach for

12  deciding fee awards, which usually involves wading through voluminous and often indecipherable

13  time records. Commenting on the lodestar approach, Judge Marilyn Hall Patel wrote in *In re*

14  *Activision Securities Litigation* 723 F Supp. 1373, 1375 (ND. Cal 1989):

> This court is compelled to ask. 'Is this process necessary?' Under a cost-benefit analysis,
> the answer would be a resounding. 'No!' Not only do the Lindy Kerr-Johnson analyses
> consume an undue amount of court time with little resulting advantage to anyone, but in
> fact, it may be to the detriment of the class members. They are forced to wait until the
> court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class
> members may suffer a further diminution of their fund when a special master is retained
> and paid from the fund. Most important, however, is the effect the process has on the
> litigation and the timing of settlement. Where attorneys must depend on a lodestar
> approach, there is little incentive to arrive at an early settlement.

21      The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for

22  counsel to spend more hours than may be necessary on litigating a case so as to recover a

23  reasonable fee, since the lodestar method, does not reward early settlement." *Vizcaino, supra,* 290

24  F.3d at 1050, fn.5. The Ninth Circuit has thus cautioned that, while a lodestar method can be used

25  as a cross check on the reasonableness of fees based on a percentage of recovery method if a

26  district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not

27  mean to imply that class counsel should necessarily receive a lesser fee for settling a case

28

weintraub tobin chediak coleman grodin
law corporation

{2345443.DOC;6}

30

1  quickly." *Id.* In this case, an excellent result was achieved, using all relevant information that is
2  and would be available, at a relatively early stage, benefiting Class Members greatly.

3      In accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have
4  recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a
5  significant result through an early settlement. For example, in *Glass v. UBS Financial Services,*
6  *Inc.*, 2007 U.S. Dist. LEXIS 8476 (ND. Cal. 2007), the court declined to conduct a lodestar cross
7  check, and approved a request for fees based only on the percentage of recovery method, because
8  it recognized that premising attorney's fees on a lodestar calculation would have unfairly penalized
9  plaintiff's counsel for settling the case without protracted litigation. *In re Manufacturers' Life*
10 *Insurance,* 2008 WL 4950939 (S.D. Cal. 1998), (court concluded that lodestar analysis was
11 unnecessary and attorney's fee was reasonable solely on percentage-recovery method).

12     If Plaintiff's Counsel spends significantly less time on this case prior to final approval than
13 would result in a low lodestar multiplier, a lodestar calculation would conflict with the "strong
14 judicial policy that favors settlements, particularly where complex class action litigation is
15 concerned." *In re Syncor ERISA Litigation* 516 F.3d 1095, 1101 (9th Cir. 2008). Moreover, a
16 lodestar calculation under these circumstances would undermine the equitable considerations that
17 dictate the percentage of recovery method for calculating attorneys' fees in common fund cases.
18 The percentage of recovery method "rests on the presumption that persons who obtain benefits of
19 a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."
20 *Staton v. Boeing*, 327 F.3d 938, 967 (9th Cir. 2003). This rule, known as the "common fund
21 doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among
22 those who benefit from the efforts of the litigants and their counsel. *Paul, Johnson, Alston & Hunt*
23 *v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

24     It is only fair that every class member who benefits from the settlement pay his or her pro
25 rata share of attorneys' fees, and Plaintiff's request for fees at the benchmark rate of 25% is
26 reasonable. Plaintiff seeks fees less than the amount Plaintiff's Counsel would be entitled to if
27 they represented each class member individually under their regular contingent fee contract, which
28

weintraub tobin chediak coleman grodin
law corporation

{2345443.DOC;6}    31    Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

provides for attorney's fees between 35% and 40% of any recovery obtained for the client.[69] Further, the Settlement Term Sheet executed by the Parties specifies up to 33% of the recovery as attorneys' fees. It would be unfair to compensate Plaintiff's Counsel at a lesser rate because they obtained relief for more than 1,600 Class Members. To the contrary, equitable considerations dictate that Plaintiff's Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The excellent result achieved by Plaintiff's Counsel merits an award of attorney's fees equal to 25% of the common fund in this case.

**F.     The Incentive Award Requested for the Representative Plaintiff is Fair and Reasonable.**

By this Motion, the Representative Plaintiff is applying for an Incentive Award of $20,000 to be paid from the $12,000,000 Gross Settlement Fund for her services on behalf of the Class and seeking preliminary approval of the requested award for the purpose of giving Notice to the Class. Courts routinely approve such awards. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001). As a condition of receiving this service payment, the Representative Plaintiff will also be required to execute a general release, which is broader than the releases applicable to other Plaintiff Class Members and imposes additional obligations on the Representative Plaintiff.[70]

Prior to the Fairness Hearing, Plaintiff will file a more extensive submission in support of her application, including declarations from the Representative Plaintiff describing her services on behalf of the Class and her time spent on the case.[71] At this stage, the Court should preliminarily approve the requested award based on the fact that the Representative Plaintiff spent a significant amount of time and effort on the litigation, including, but not limited to, providing Class Counsel with information to help them prepare the case, responding to Class Counsel's requests for additional information, being interviewed by Class Counsel regarding the claims at issue in this

---

[69] Perez Decl., ¶ 54; Post Decl., ¶ 47.

[70] Perez Decl., ¶¶ 2, 50-51; Exh. A, § 4.7.

[71] Perez Decl. ¶ 50.

Memorandum of Points & Authorities ISO Motion
for Preliminary Approval of Class Settlement
3:16-cv-04889-RS

weintraub **tobin** chediak coleman grodin
law corporation

case and being deposed at length by Defendants' counsel.[72] Further, the amounts requested here are within the range of what courts have approved in numerous comparable cases, in Class Counsel's experience.[73]

For these reasons, the Court should make a preliminary determination that the requested award is fair, reasonable, and proper, and preliminarily approve the award on that basis.

## G.      The Settlement Administrator and Administration Process.

The proposed Settlement Administrator shall be experienced administrator Simpluris, Inc.[74] The Parties estimate that Administrative Expenses will not exceed $40,000 given the number of potential Class Members (estimated to be 1600 as of December 2016) and the payroll records maintained, and to be provided by, Defendants Kindred and Gentiva.[75] The estimated administration costs of up to $40,000 are reasonable in relation to the $12,000,000 Gross Settlement Fund to be paid by Defendants Kindred and Gentiva.

The administration costs will be paid out of the Gross Settlement Fund.[76] Any unused funds allocated to administration costs shall become part of the Net Settlement Fund.[77]

## H.      The Court Should Set a Fairness Hearing.

Because the case meets the requirements for certification of a settlement class and the Class Settlement meets the requirements for preliminary approval, the Court should set a final fairness hearing to decide whether to grant final approval to the Class Settlement, as well as whether to grant the Representative Plaintiff's application for an Incentive Award and Class Counsel's motion for attorney's fees. *In re Wireless Facilities, supra*, 253 F.R.D. at 634; Fed. R. Civ. P. 23(e)(2). As reflected in the proposed order submitted herewith, Plaintiff further requests that the Court set a briefing schedule for the Motion for Judgment and Final Approval, the Motion

---

[72] Id. at ¶ 51.

[73] Id. at ¶ 51.

[74] Id. at ¶ 32.

[75] Id. at ¶ 32.

[76] Id. at ¶ 32.

[77] Id. at ¶ 32.

weintraub tobin chediak coleman grodin
law corporation

for Class Counsel's attorneys' fees and costs and Motion for Class Representative's Incentive Award.

## I.   The Court Should Direct Notice to the Class of the PAGA Settlement, the Proposed Class Settlement and the Final Fairness Hearing for the Proposed Class Settlement.

In the case of a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). For a Rule 23(b)(3) class, the court must direct the best notice that is practicable under the circumstances, including individual notice to all members of the class who can be identified through reasonable efforts. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotes omitted).

The form of written Notice of PAGA and Class Action Settlement ("Class Notice") provided for by the Settlement meets all the foregoing requirements regarding the content of a notice to Rule 23(b)(3) class members.[78] The Notice explains in plain and easily understood language what the case is about, how much Defendants Kindred and Gentiva are paying to settle, the requested amounts to be paid to Class Counsel from the Gross Settlement Fund for attorney's fees and costs, an Incentive Award for the Representative Plaintiff, the amount of the individual PAGA Payment to each PAGA Releasee, the projected size of the Net Settlement Fund to be

///

---

[78] Id. at ¶ 2, Exh. A-1, Class Notice.

weintraub tobin chediak coleman grodin
law corporation

1   distributed to Claimants, how the Net Settlement Fund will be distributed, how to submit a Claim

2   Form or opt out, and how to object and appear at the Fairness Hearing.[79]

3   　　The Parties' proposed plan for directing Class Notice, Claim Form and PAGA Payment

4   Checks to the Class set forth in the Settlement also is "the best notice that is practicable under the

5   circumstances." Using last-known addresses provided by Defendants Kindred and Gentiva and

6   additional addresses located through a search of the National Change of Address Database, the

7   third-party Settlement Administrator will send the Class Notice, Claim Form and PAGA Payment

8   Checks by First Class United States Mail to all Class Members.[80] Further, the Settlement

9   Administrator shall take all reasonable steps to obtain the correct address of any Class Members

10   for whom the Class Notice, Claim Form and PAGA Payment Checks are returned by the post

11   office as undeliverable and shall attempt remailings in those situations.[81] Plaintiffs are not aware

12   of any additional method of distribution that would be reasonably likely to result in the receipt of

13   notice by Class Members who may otherwise not receive notice pursuant to the proposed

14   distribution plan. For these reasons, the Settlement's plan for directing Class Notice, Claim Form

15   and PAGA Payment Checks to class members satisfies the Rule 23(c)(2)(B) requirement for

16   directing the best notice practicable under the circumstances. *Wright v. Linkus Enter., Inc.*, 259

17   F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortgage Co.*, 2009 WL 4581276 9

18   (C.D. Cal. Apr. 13, 2009).

19   　　**J.   Proposed Preliminary Schedule.**

20   　　For the foregoing reasons, the Court should enter an order substantially in the form of the

21   proposed order submitted herewith approving the Parties' plan for directing Notice to Class

22   Members, and ordering the implementation of the Plan on the terms set forth in the Settlement.

23   Plaintiff proposes the following schedule upon preliminary approval of the Class Settlement and

24   provisional class certification:

25

26   ──────────────

[79] Id. at ¶ 2; Exh. A-1, Class Notice.

27   [80] Perez Decl., ¶ 2, Exh. A, §§ 6.1 6.3, 6.4.

28   [81] Perez Decl., ¶ 2, Exh. A, § 6.3, 6.4.

weintraub **tobin** chediak coleman grodin
law corporation

1    1)    Defendants are to produce the names, last known addresses, last known personal

2    telephone numbers, social security numbers and total number of Days Worked during the

3    Settlement Class Period for all Class Members to the Settlement Administrator within thirty (30)

4    calendar days after the Court grants preliminary approval of this class settlement.

5    2)    The Settlement Administrator is to mail the Class Notice, Claim Form and PAGA

6    Payment Check to Class Members no later than fifteen (15) calendar days after it is provided with

7    the list of Class Member information by Defendants.

8    3)    Deadline for any Class Member who wishes to become a Claimant and receive an

9    Individual Settlement Payment to mail a completed and valid Claim Form to the Settlement

10   Administrator will be forty-five (45) calendar days from the date the Settlement Administrator

11   initially mails the Class Notice, Claim Form and PAGA Payment Check to Class Members.

12   4)    Deadline for Class Members to "opt out" will be forty-five (45) calendar days from

13   the date that the Settlement Administrator initially mails the Class Notice, Claim Form and PAGA

14   Payment Check to Class Members.

15   5)    The Settlement Administrator shall notify Class Counsel and the counsel for the

16   Defendant of the number of opt-outs on a weekly basis throughout the Notice Period.

17   6)    The Settlement Administrator shall provide to Class Counsel and counsel for

18   Defendant a declaration attesting to the completion of the notice process set forth in section VI of

19   the Settlement Agreement, including an explanation of efforts to resend undeliverable notices

20   returned with forwarding addresses, and a summary of claims filed, disputed claims, and opt-outs,

21   which declaration shall be filed with the Court by Class Counsel along with papers requesting

22   final approval of the Class Settlement.

23   7)    Last day to file written objections to the Class Settlement shall be forty-five (45)

24   calendar days from the date that the Settlement Administrator initially mails the Class Notice,

25   Claim Form and PAGA Payment Check to Class Members.

26   8)    Last day to file responses to any written objections to the Class Settlement shall be

27   seven (7) calendar days before the Final Approval Hearing.

28   ///

1    9)    The Parties propose that the Final Approval Hearing be scheduled one-hundred and

2 thirty (130) calendar days following the Court's granting of preliminary approval of the Class

3 Settlement.

4    **VI. CONCLUSION**

5    For the foregoing reasons, Plaintiff respectfully submits that the Court should grant her

6 Motion in its entirety and sign and enter the proposed order that has been agreed to by the Parties

7 and submitted to the Court, including information to be added by the Court regarding the date and

8 time for the Fairness Hearing and related matters.

9    Dated: April 6, 2018                **PEREZ LAW OFFICES**

10

11                                   By:___/s/ Anthony M. Perez, Jr._____
                                          Anthony M. Perez, Jr.

12

13   Dated: April 6, 2018                **weintraub tobin** chediak coleman grodin
                                          LAW CORPORATION
14

15                                   By:___/s/ Brendan J. Begley_____
                                          Brendan J. Begley
16
                                          Attorneys for Plaintiff
17

18

19

20

21

22

23

24

25

26

27

28

{2345443.DOC;6}                     37                Memorandum of Points & Authorities ISO Motion
                                                      for Preliminary Approval of Class Settlement
                                                                              3:16-cv-04889-RS